## CHARLES WILCOX v. T. J. CHAMBERS.

Repeated decisions have settled beyond further question that the consent of the Federal Executive of Mexico was essential to a grant of land within the littoral leagues, whether such grant was to a native Mexican or to a foreigner; and further, that such consent can not be presumed in favor of other than colonial titles, either from the consent of the Federal Executive to the colonization contract within the limits of which, with the assent of the empresarios, the grant is located, or from the legislation of the General Government of Mexico or of Coahuila and Texas, or from correspondence between the public functionaries of those governments, or from the fact that the official who extended the title was the Commissioner General of Colonization, or from the ratification of the title so extended made by the Governor of Coahuila and Texas subsequent to the decree of the 2d of May, 1834.

The cases of Goode v. McQueen's heirs, (3 Texas Rep., 241,) Edwards v Davis, (Id., 321,) The Republic v. Thorn, (Id., 499,) and Smith v. Power, (14 Texas Rep., 146,) referred to and their authority recognized.

It was error to allow the jury to infer lawful authority for the location of a concession within the littoral leagues from the consent given by the Federal Executive to the empresarios, Vehlien and Zavala, to colonize the border and littoral leagues.

On the contrary, the court should have instructed the jury, *as matter of law,* that the consent to colonize did not have the effect of dispensing with the consent of the Federal Government to the location of a concession, other than to a colonist, within the littoral leagues.

By its decree of March 26th, 1834, the State of Coahuila and Texas did not assert the right to dispose by sale of all the public domain of the State,

irrespective of the restraints with regard to the border and littoral leagues. The 32d article of that decree—in which alone mention is made of the border and littoral leagues—has reference only to that class of persons in whose favor the General Government had previously communicated to the State Government the resolutions of April and August, 1828. By that article the Congress of Coahuila and Texas did not intend to violate the 4th article of the general colonization law of August 18th, 1824, nor to assume that the last mentioned article had, with the consent of the General Government, become inoperative in Texas.

The decree of the 2d of May, 1834, abolished any power to dispose of public lands which may have been conferred upon the Governor of Coahuila and Texas by the provisions of the law of March 26th, 1834; consequently, the ratification by the Governor, subsequent to May 2d, 1834, of a title extended to a person other than a colonist within the littoral leagues, imparted to such title no additional validity.

APPEAL from Liberty.

Suit by the appellee against the appellant for a tract of land in the county of Liberty.

The record of this case has not reached the hands of the reporters; but the facts, so far as they are necessary to the elucidation of the opinion, appear to be sufficiently stated by the court.

BELL, J. On the 21st day of December, Anno Domini eighteen hundred and twenty-nine, one Vicente Padilla, representing himself to be an actual resident of the town of San Felipe de Austin, made application to the government of Coahuila and Texas for the sale to him of eleven leagues of land, of the vacant domain of the State, in accordance with the provisions of the twenty-fourth article of the colonization law of the 24th of March, A. D. 1825. On the 5th day of February, Anno Domini eighteen hundred and thirty, the supreme government of the State granted the favor solicited by the said Vicente Padilla, and ordered the Commissioner-General, appointed by the State, to put the applicant in possession of the land, and extend to him the corresponding title. On the 3d day of March, A. D. eighteen hundred and thirty, Vicente Padilla made application to Juan Antonio Padilla, the Commissioner-General for the State, to have the lands which the Government had agreed to sell to him, surveyed, and to have the corresponding titles extended. On the 28th day

of March, A. D. eighteen hundred and thirty, the Commissioner, Juan Antonio Padilla, extended title to the said Vicente Padilla, to five of the eleven leagues, according to the survey made by Bartlet Sims, on the eastern margin of Galveston Bay, and between Turtle Bayou and Double Bayou. Upon the *testimonio* thus issued by the Commissioner-General, and beneath the signatures of the Commissioner and of the assisting witnesses, is endorsed the approbation of Vidaurri, the Governor of the State, under date of June 17th, A. D. 1834; and following the Governor's signature is the signature of J. Antonio Padilla, who was at that time Secretary of State. There also appears in the same connection the impress of the great seal of the State. Attached to this testimonio is the certificate of Charles S. Taylor, Chief Justice of Nacogdoches county, made in the month of March, A. D. 1838, as follows: "Personally appeared before me, &c., Juan Antonio Padilla, who being duly sworn sayeth, that he is acquainted with the signatures to the annexed title for five leagues of land situated between the mouths of Turtle Bayou and Double Bayou, on Galveston Bay; that he knows them all to be genuine; that said title was made by himself as Commissioner-General of Colonization, as therein set forth, and previous to the circulation and his reception of the order of the government prohibiting the location of concessions of land within the limits of the colonies, without the consent of the respective empresario, commonly known as the additional article to the instructions of commissioners; that the ratification of the Governor, Vidaurri, placed at the conclusion of said title, was made and signed by said Vidaurri, as therein expressed, as Governor of the State; that the seal upon said ratification was the one used by the Executive of the State, and that it was placed upon said title by his order."

The five leagues of land thus conveyed to Vicente Padilla, were by him conveyed to Thomas J. Chambers, on the 23d day of June, eighteen hundred and thirty.

This suit was instituted by the appellee, Thomas J. Chambers, claiming the land as his own by virtue of the grant to Padilla, and the sale by Padilla to himself; and alleging that the appellant, Wilcox, is a trespasser upon the land.

A question is made whether or not the land is contained within the twenty border leagues; but it is admitted by the appellee, and clearly shown by the proof, to be within the ten littoral leagues.

This case was decided at the fall term, A. D. 1849, of the District Court, before the 3d volume of the Texas Reports, containing the cases of Goode v. McQueen's heirs, Edwards v. Davis, and the Republic v. Thorn, was published. Since the trial of the cause in the District Court, the main questions involved in it have been much considered by the bar and by this court, and we are now called upon, not so much to investigate, as to say whether or not the former decisions of this court shall be followed. The learned appellee, in the very able argument which he has presented in this case, has not sought to distinguish it from other cases which have been decided by the court, so much as he has labored to show that the former decisions proceeded upon a narrow and erroneous view of the Mexican laws and customs relating to such titles as the one now under consideration. And while I do not feel at liberty, in view of all the considerations involved, to decline to follow a long train of decisions, which have established a rule of property in the State, I feel that it is due to candor, and not improper, to declare that if the question were an original one, I should feel bound as a judge to say that a title such as the appellee presents in this case ought to be held to be valid; that the consent of the Federal Executive of Mexico to the grant to a native Mexican of land within the border or littoral leagues was never necessary, but that such consent was only necessary to a grant to a foreigner, or to a contract to colonize, whether the contractor was a foreigner or a Mexican; and that, even if it could be shown to be true that the consent of the Federal Executive was necessary to the location within the border or littoral leagues of a grant, in sale, or otherwise, to a native Mexican, such consent, in a case like the present, is sufficiently shown, and ought to be conclusively presumed from the legislation of the General Government and of the Government of the State of Coahuila and Texas, from the correspondence of public functionaries of both Governments, from a policy clearly indicated by such legislation and correspondence, and (in this case) from the character of the officer

who extended the title, and the subsequent ratification of the title by the Governor of the State.

But these questions have been several times decided, and have been declared to be no longer open for discussion. I shall content myself, therefore, by stating the manner in which the questions in this case were presented, and wherein the rulings of the judge who tried the case below are at variance with the law, as settled by the former decisions of this court.

The objection taken upon the trial below to the admissibility in evidence of the testimonio to Vicente Padilla does not seem to be relied upon in this court, and we are of opinion that it was properly admitted in evidence.

We do not deem it necessary to consider the objection taken to the admission in evidence of the act of sale from Vicente Padilla to Chambers. The deposition of Taylor seems to have been taken to prove the execution of that instrument; and it is contended by the appellee that Taylor's deposition was read to prove its execution, while the counsel for the appellant says that Taylor's deposition was not read. As the case will be reversed upon other grounds, we deem it unnecessary to consider this point further.

Neither do we esteem the ruling of the court below upon the question of the admissibility of the deposition of Bartlet Sims material to be considered in the view we take of the case.

It is quite apparent that the plaintiff in the court below relied upon the consent given by the Federal Executive of Mexico to the empresarios, Vehlien and Zavala, to colonize the littoral and border leagues, as sufficiently authorizing the location by Vicente Padilla of the land sold to him, anywhere within the territorial limits of those colonial enterprises; and it is also apparent from the instructions given by the judge who tried the case below, to the jury, that he concurred in this view, assenting, however, to the general proposition that the consent of the Federal Executive to the location of the grant within the border or coast leagues was necessary. This view is directly opposed by the opinion of this court in the case of Smith v. Power, 14th Tex. Rep., 146; an opinion by which the appellee confesses that he finds himself confounded whenever he reads it.

I shall now proceed, first calling attention to the fact that the colonization contracts of Vehlien and Zavala were read in evidence to the jury on the trial of the case below, to group those charges of the court below which were given to the jury, and those which the court refused to give, though asked by the counsel for the present appellant, so that the errors for which the judgment of the court below will be reversed, may be distinctly perceived.

The plaintiff in the court below, Chambers, asked the court to give to the jury the following instructions: "4th. That the formal declaration of the sovereign State of Coahuila and Texas that the Supreme Executive of the Government of Mexico had given consent for the colonization of any littoral or border lands within said State is competent evidence to prove such consent." This instruction was intended, of course, to direct the attention of the jury to the recitals contained in the contract with Vehlien and Zavala, because those contracts did contain the formal declaration of the authorities of the sovereign State of Coahuila and Texas that the Supreme Executive of the Government of Mexico had consented to the colonization of the very territory or tract of country within which the land in controversy was included. The court gave the instructions, with the following qualification: " But whether the consent to colonize would embrace the title of plaintiff is a question of fact to be determined by the jury." This was an unfortunate qualification, because it added to an instruction, which, though true in its precise terms, was not proper to be given under the circumstances of the case—another proposition which is clearly erroneous. It was the duty of the court to tell the jury, *as matter of law*, that the consent to colonize did not have the effect to dispense with the consent of the Federal Government to the location by Vicente Padilla.

The counsel for the defendant below asked the court to instruct the jury as follows: " 17th. That recitals in a grant or contract with Vehlien and Zavala are not evidence in a suit between the parties, they being strangers to such contract." The court refused to give this charge.

The counsel for the defendant below then asked, in immediate connection with the foregoing, the following instruction: " 18th.

That said contracts (meaning Vehlien's and Zavala's) only gave authority to the empresarios to colonize, but gave no authority for the purchase of grants within said colony." This instruction the court also refused to give. The court gave, at the instance of the defendant's counsel, the following instruction: "If the jury believe from the evidence that the grant was of land embraced within the ten littoral leagues bordering on the Gulf of Mexico, then it was void, unless the consent of the Supreme Executive of Mexico was obtained for said grant, which consent was a fact which must be proven to the satisfaction of the jury." The effect of these instructions, given and refused by the court, is very obvious. It was to enable the jury to find the consent of the Federal Executive of Mexico to the location by Vicente Padilla of his grant, within the coast leagues, in the colonization contracts of Vehlien and Zavala. This was clearly error, in view of the opinion of this court in the case of Smith v. Power, 14th Tex. Rep.

We have considered the effect which, in view of the former decisions which have already been referred to, ought to be given to the approbation of the title of Vicente Padilla by the Governor, Vidaurri, on the 17th of June, A. D. 1834. It is argued by the appellee that by the decree of the 26th of March, A. D. 1834, the Congress of the State of Coahuila and Texas undertook to repeal, and did repeal, the former laws in relation to the colonization of the public lands, and assumed the right to sell all the public lands without exception; and that, although such legislation was in contravention of the 4th article of the national colonization law of the 18th of August, 1824, it was to be respected until declared to be null by the National Congress.

From these propositions the consequence is deduced (by the appellee) that the approbation of the title of Vicente Padilla, by the Governor, after the repeal of the former laws of the State relating to the border and littoral leagues, was equivalent to a grant made at the time of such approbation; and the case of Wood v. McKinney (not yet reported) is cited, in which this court decided that a subsequent confirmation by the Governor of a title extended to the widow of one Rafael Manchola, by virtue of a concession to the said Rafael Manchola, con-

veyed a good title to the widow. (The case of Wood v. McKinney is in the hands of the Reporter, but I believe I state it with substantial correctness.) We are of opinion, however, that too much is claimed for the decree of the 26th of March, A. D. 1834, when it is assumed that the State thereby asserted the right to dispose by sale of all the public domain of the State. The decree made no mention, in any of its articles except the 32d, of the border and littoral leagues; and it would appear more reasonable that the State intended to conform to the provision of the 4th article of the national colonization law, than to suppose an intention to disregard that provision, especially when it cannot be shown that the General Government had consented that the 4th article of the law of the 18th of August, A. D. 1824, should cease to be operative in Texas. We are of opinion that the 32d article of the decree of the 26th of March, A. D. 1834, was only intended to refer to that class of persons in whose favor the General Government had previously communicated to the State government "the resolutions of April and August, 1828." We are of opinion that the congress of the State did not intend by the 32d article of the decree referred to, to violate the 4th article of the general colonization law; nor was that article enacted upon any idea that the 4th article of the general colonization law had ceased, by the consent of the General Government, to be operative in Texas; but, as before stated, the said article was intended to apply to a particular class of persons, and in behalf of that class the State government felt authorized to enact the said 32d article, by the resolutions of April and August, 1828, to which reference is made in the article itself, and by previous correspondence between the State and General Governments. But be this as it may, whatever power to dispose of the public lands may be supposed to have been lodged in the hands of the Governor of the State by the general provisions of the law of the 26th of March, 1834, that power must have been taken away by the decree of the 2d of May of the same year, which dispensed with all the laws in respect to the alienation of vacant lands, which latter decree was enacted prior to the approbation by the Governor, Vidaurri, of the title extended to Vicente Padilla.

We are of opinion that the approbation of Vicente Padilla's title by the governor imparted to it no validity which it did not equally possess without it.

We do not deem it necessary to discuss the questions which are made in the case, arising out of the question of fact whether the land in controversy is embraced within the border leagues or not. The land is clearly within the littoral leagues. The proper mode of determining the limits of the twenty border leagues is a question concerning which the parties are at issue, but to discuss it now might perhaps be without effect upon the future of the case, and we therefore think proper to waive the discussion. Because of the errors in the judgment of the court below, which are pointed out in the opinion, the judgment is reversed and the cause remanded.

Reversed and remanded.